IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GREGORY S. WARREN,           )
                             )
          Plaintiff,         )
                             )
     v.                      )     Civil Action No. 10-1184
                             )     Chief Judge Gary L. Lancaster
MICHAEL J. ASTRUE,           )
COMMISSIONER OF SOCIAL       )
SECURITY,                    )
                             )
          Defendant.         )

<u>MEMORANDUM OPINION AND ORDER OF COURT</u>

Gary L. Lancaster
Chief Judge                              December 13, 2011

## I.   Introduction

Plaintiff Gregory S. Warren ("Warren") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  For the reasons that follow, the Commissioner's decision will be vacated, and the case will be remanded to him for further administrative proceedings.[1]

_____

[1] The applicable statutory provision provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming,

## II.  Procedural History

Warren protectively applied for DIB and SSI benefits on September 21, 2006, alleging that he had become disabled on January 8, 2006.  (R. at 103, 108, 118).  The applications were administratively denied on February 16, 2007.  (R. at 77, 82). Warren responded on March 22, 2007, by filing a timely request for an administrative hearing.  (R. at 88).  On September 26, 2008, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Anne W. Chain (the "ALJ").  (R. at 23). Warren, who was represented by counsel, appeared and testified at the hearing.  (R. at 31-49).  Testimony was also taken from Barbara Beer ("Beer"), Warren's former girlfriend, and Frances Kinley ("Kinley"), an impartial vocational expert.  (R. at 49-58).  In a decision dated October 29, 2008, the ALJ determined that Warren was not "disabled" within the meaning of the Act. (R. at 7-22).

On October 30, 2008, Warren sought administrative review of the ALJ's decision by filing a timely request for review with the Appeals Council.  (R. at 4-6).  The Appeals Council denied Warren's request for review on July 29, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case.  (R. at 1).  Warren commenced this action on September 7,

---

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

2010, seeking judicial review of the Commissioner's decision. (ECF Nos. 1-3).  Warren and the Commissioner filed motions for summary judgment on February 4, 2011, and March 7, 2011, respectively.  (ECF Nos. 8 & 10).  The cross-motions for summary judgment filed by the parties are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal

quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.

4

He or she must make specific findings of fact.  *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further.  At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  §§ 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he

is determined not to be disabled.  If the claimant
survives the fourth stage, the fifth, and final, step
requires the SSA to consider so-called "vocational
factors" (the claimant's age, education, and past work
experience), and to determine whether the claimant is
capable of performing other jobs existing in
significant numbers in the national economy.  §§
404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157

L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative

determination is sought, the agency's decision cannot be

affirmed on a ground other than that actually relied upon by the

agency in making its decision.  In *Securities & Exchange*

*Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91

L.Ed. 1995 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple
but fundamental rule of administrative law.  That rule
is to the effect that a reviewing court, in dealing
with a determination or judgment which an
administrative agency alone is authorized to make,
must judge the propriety of such action solely by the
grounds invoked by the agency.  If those grounds are
inadequate or improper, the court is powerless to
affirm the administrative action by substituting what
it considers to be a more adequate or proper basis.
To do so would propel the court into the domain which
Congress has set aside exclusively for the
administrative agency.

*Chenery Corp.*, 332 U.S. at 196.  The United States Court of

Appeals for the Third Circuit has recognized the applicability

of this rule in the Social Security disability context.

*Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).

Thus, the Court's review is limited to the four corners of the ALJ's decision.  *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.  The ALJ's Decision**

In her decision, the ALJ determined that Warren had not engaged in substantial gainful activity subsequent to his alleged onset date.  (R. at 12).  Warren was found to be suffering from degenerative disc disease, dysfunction of the knee, arthritis, diabetes mellitus, chronic obstructive pulmonary disease ("COPD"), depression, anxiety, a learning disorder, obesity, substance abuse and hypertension.  (R. at 12-13).  Although his hypertension was deemed to be a "non-severe" impairment, his remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c).  (R. at 12-13).  The ALJ concluded that these impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 13-14).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Warren's residual functional capacity as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) and 416.967(a) except
> claimant can lift and carry up to ten pounds, stand
> and walk two hours and sit for six hours out of an
> eight hour day, is limited in pushing and pulling in

7

the lower extremities, can engage in occasional
stooping and bending, should avoid kneeling,
crouching, balancing and climbing, requires a sit
stand option on a ½ hour basis, should avoid exposure
to concentrated amounts of fumes, odors, dusts and
gases, is limited to simple routine tasks, short
simple instructions, few work place changes, no work
at production rate pace and no more than occasional
interaction with the public and co-workers.

(R. at 14-15).  Warren had "past relevant work"[2] experience as a

laborer and rove operator.  (R. at 52).  Kinley classified these

positions as "semi-skilled"[3] jobs at the "heavy"[4] level of

exertion.  (R. at 53).  Since Warren was deemed to be capable of

performing only "unskilled"[5] work at the "sedentary"[6] level of

_____

[2] "Past relevant work" is defined as "substantial gainful activity" performed
by a claimant within the previous fifteen years that lasted long enough for
him or her to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1),
416.960(b)(1).  The Commissioner has promulgated comprehensive regulations
governing the determination as to whether a claimant's work activity
constitutes "substantial gainful activity."  20 C.F.R. §§ 404.1571-404.1576,
416.971-416.976.

[3] "Semi-skilled work is work which needs some skills but does not require doing
the more complex work duties.  Semi-skilled jobs may require alertness and
close attention to watching machine processes; or inspecting, testing or
otherwise looking for irregularities; or tending or guarding equipment,
property, materials, or persons against loss, damage or injury; or other
types of activities which are similarly less complex than skilled work, but
more complex than unskilled work.  A job may be classified as semi-skilled
where coordination and dexterity are necessary, as when hands or feet must be
moved quickly to do repetitive tasks."  20 C.F.R. §§ 404.1568(b), 416.968(b).

[4] "Heavy work involves lifting no more than 100 pounds at a time with frequent
lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. §§
404.1567(d), 416.967(d).

[5] "Unskilled work is work which needs little or no judgment to do simple duties
that can be learned on the job in a short period of time.  The job may or may
not require considerable strength.  For example, [the Commissioner]
consider[s] jobs unskilled if the primary work duties are handling, feeding
and offbearing (that is, placing or removing materials from machines which
are automatic or operated by others), or machine tending, and a person can
usually learn to do the job in 30 days, and little specific vocational
preparation and judgment are needed.  A person does not gain work skills by
doing unskilled jobs."  20 C.F.R. §§ 404.1568(a), 416.968(a).

[6] "Sedentary work involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and

exertion, it was determined that he could not return to his past relevant work.  (R. at 20).

Warren was born on November 28, 1969, making him thirty-six years old on his alleged onset date and thirty-eight years old on the date of the ALJ's decision.  (R. at 20, 103, 108).  He was classified as a "younger person" under the Commissioner's regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  He had a high school education and an ability to communicate in English. (R. at 121, 128); 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5).  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Warren could work as a ticket checker, a charge account clerk, or an order clerk.  (R. at 20).  Kinley's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[7]  (R. at 55).

## V.   Discussion

In support of his motion for summary judgment, Warren argues that the ALJ's residual functional capacity assessment

---

small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[7]At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

and corresponding hypothetical questions to Kinley did not account for all of the limitations caused by his impairments. (ECF No. 9 at 17-33).  The Commissioner contends that the ALJ properly accounted for all of the limitations that were credibly established in the record.  (ECF No. 11 at 17-18).  Under the present circumstances, there is no need for the Court to decide the broader question of whether the ALJ's residual functional capacity determination is itself "supported by substantial evidence," since the relevant hypothetical question did not incorporate all of the limitations later identified in her opinion.

At the hearing, the ALJ described an individual with Warren's nonexertional limitations who was exertionally limited to "light"[8] work.  (R. at 53).  Kinley testified that such an individual could work as a stock clerk, cashier, surveillance system monitor or laundry worker.  (R. at 53-54).  When the ALJ added the additional limitation restricting the described individual to "less than occasional interaction with the public and co-workers," Kinley stated that such an individual could not work as a cashier, but that he or she could still work as a

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

stock clerk, surveillance system monitor or laundry worker.  (R. at 54).  She went on to explain that the hypothetical individual described by the ALJ could also work as a cleaner.  (R. at 54). In a follow-up question describing an individual who was exertionally limited to "sedentary" work, the ALJ included most of Warren's limitations but did not mention a restriction permitting only occasional interaction with co-workers and members of the general public.  (R. at 54-55).  Kinley responded by testifying that such an individual could work as a ticket checker, a charge account clerk, or an order clerk.  (R. at 55). The ALJ later asked Kinley to add to her "prior hypothetical" a sit/stand option permitting the described individual to sit or stand every thirty minutes.  (R. at 55).  Kinley declared that the addition of the sit/stand option to the ALJ's "very last hypothetical" would not compromise an individual's ability to work as a ticket checker, a charge account clerk, or an order clerk.  (R. at 55-56).

The ALJ ultimately determined that Warren could engage in a limited range of sedentary work involving, *inter alia*, "no more than occasional interaction with the public and co-workers." (R. at 14-15).  She relied on Kinley's testimony to conclude that Warren could work as a ticket checker, a charge account clerk, or an order clerk.  (R. at 20).  The testimony relied upon by the ALJ had been offered by Kinley in response to the

11

hypothetical question describing an individual who could perform only sedentary work.  (R. at 54-55).  Unlike the earlier hypothetical question describing an individual who could perform light work, the question describing an individual who was limited to sedentary work did not include a limitation restricting the individual to only occasional interaction with co-workers and members of the general public.  (R. at 53-56).

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony properly incorporates all of the claimant's functional limitations.  *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).  Where a credibly established limitation is omitted from an administrative law judge's hypothetical question to a vocational expert, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation.  *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).  Since the ALJ's hypothetical question describing an individual who could perform only sedentary work did not include a limitation restricting that individual to work involving only occasional interaction with co-workers and members of the general public, Kinley's testimony did not establish that Warren could work as a ticket checker, a charge account clerk, or an

order clerk.  (R. at 54-56).  Consequently, the ALJ's critical finding of fact in this case is *not* "supported by substantial evidence."  42 U.S.C. § 405(g).

Under the present circumstances, it is clear that the ALJ's decision cannot stand.  The only remaining question is whether an immediate award of benefits is warranted, or whether the appropriate remedy is a remand for further administrative proceedings.  A judicially-ordered award of benefits is proper only where the evidentiary record has been fully developed, and where the evidence as a whole clearly points in favor of a finding that the claimant is disabled and entitled to benefits. *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010).  A careful review of the evidence in this case reveals that the proper remedy is a remand for further proceedings rather than an immediate award of benefits.

On February 16, 2006, Dr. Michael McFadden observed in a treatment note that Warren qualified for "partial disability" but not for "total disability."  (R. at 191).  Dr. Tegendra S. Wallia, a treating physician, reported on January 18, 2007, that Warren's physical impairments were so severe that he could not engage in sedentary work activities.  (R. at 295-301).  Dr. Prabhat Seth performed a consultative physical examination of Warren on February 1, 2007.  (R. at 282-287).  Based on the findings of his examination, Dr. Seth opined that Warren was

13

capable of engaging in a range of "medium"[9] work activities involving only occasional bending and no kneeling, stooping, crouching, balancing, climbing or concentrated exposure to fumes, odors, gases or humidity.  (R. at 286-287).  Michael Yanak, a nonexamining medical consultant, indicated on February 12, 2007, that Warren could engage in light work activities involving only occasional postural maneuvers.  (R. at 288-294). On September 29, 2008, Dr. Wallia reiterated his view that Warren was precluded from engaging in sedentary work activities. (R. at 344-345).  The ALJ reconciled the conflicting medical opinions by restricting Warren to a narrow range of sedentary work.  (R. at 14-19).

On April 20, 2006, Warren was voluntarily hospitalized at Good Samaritan Hospital in Vincennes, Indiana, after trying to commit suicide.  (R. at 206-225).  He was discharged the next day.  (R. at 220).  Dr. Frank Mrus performed a consultative psychological evaluation of Warren on December 15, 2006.  (R. at 256-263).  After completing the evaluation, Dr. Mrus reported that Warren was "markedly" limited in his abilities to understand and remember detailed instructions, to carry out detailed instructions, to respond appropriately to work pressures in a usual work setting, and to respond appropriately

---

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

to changes in a routine work setting.  (R. at 262).  Warren's
ability to interact appropriately with members of the general
public was deemed to be "moderately" to "markedly" limited.  (R.
at 262).  Dr. Mrus further noted that Warren's reading, spelling
and mathematical skills were "reportedly below average," and
that he would most likely experience difficulties when forced to
read manuals and instruction sheets.  (R. at 263).  Dr. Arlene
Rattan, a nonexamining psychiatric consultant, opined on January
10, 2007, that Warren had only "moderate" mental limitations.
(R. at 264-279).  The ALJ incorporated several of the
limitations identified by Dr. Mrus into her residual functional
capacity finding.  (R. at 14-15, 262).

     Where the probative medical evidence is in conflict, the
Commissioner "is free to choose the medical opinion of one
doctor over that of another."  *Diaz v. Commissioner of Social
Security*, 577 F.3d 500, 505 (3d Cir. 2009).  Given that Dr. Seth
had found Warren to be capable of performing medium work, the
ALJ was not required to credit Dr. Wallia's assertion that
Warren was incapable of performing sedentary work.  The ALJ's
treatment of Dr. Mrus' examination report, however, was more
problematic.  Although Dr. Mrus reported that Warren might not
have been capable of reading manuals and instruction sheets,
these alleged limitations were not discussed by the ALJ.  (R. at
14-19).  Instead of discussing Warren's reading difficulties,

the ALJ simply stated that his "learning disorder" appeared to be "manageable with appropriate treatment."  (R. at 19). Although the ALJ was not required to recognize every limitation alleged by Warren, she was not free to reject *pertinent* or *probative* medical evidence without explaining her reasons for doing so.  *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008).  During the course of the upcoming administrative proceedings, the Commissioner must consider whether Warren's alleged reading difficulties, when combined with his remaining limitations (including the limitation restricting him to only occasional interaction with co-workers and members of the general public), preclude him from performing the duties of all jobs existing in significant numbers in the national economy.

Warren must be afforded "an opportunity to be heard" on remand.  *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010).  Since further administrative proceedings are required because of the ALJ's failure to adequately convey Warren's limitation to only occasional interaction with co-workers and members of the general public in the relevant hypothetical question to Kinley, the Court has no occasion to consider the merits of Warren's remaining arguments.  (ECF No. 9 at 17-22, 27-29; ECF No. 12 at

16

2-6). It suffices to say that the Commissioner will now have an opportunity to address those issues in the first instance.

## VI. Conclusion

The final decision of the Commissioner in this case is not "supported by substantial evidence." 42 U.S.C. § 405(g). Nevertheless, the present state of the record does not necessarily warrant a determination that Warren was statutorily disabled during the relevant period of time. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). Accordingly, the Court will deny the Commissioner's motion for summary judgment (*ECF No. 10*), deny Warren's motion for summary judgment (*ECF No. 8*) to the extent that it requests an immediate award of benefits, and grant Warren's motion for summary judgment to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings.

AND NOW, this 13th day of December, 2011, IT IS HEREBY ORDERED that the motion for summary judgment filed by the Defendant (*ECF No. 10*) is **DENIED**, and that the motion for summary judgment filed by the Plaintiff (*ECF No. 8*) is **DENIED** to the extent that it requests a judicially-ordered award of benefits but **GRANTED** to the extent that it seeks a vacation of the final decision of the Commissioner of Social Security, and a remand for further administrative proceedings. The decision of the Commissioner of Social Security is hereby **VACATED**, and the

17

case is remanded to him for further proceedings consistent with
this opinion.

BY THE COURT:

Gary L. Lancaster
Chief United States District Judge

cc:  All counsel of record